No. 24-11306

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

EZEMARVAL, LLC,
d/b/a Miacargo Group,
*Appellant*

v.

EL INSTITUTO POSTAL DOMINICANO,
*Appellee*

Appeal from the U.S. District Court for the
Southern District of Florida Case,
No. 22-cv-21822 — Hon. Jose E. Martinez

**REPLY BRIEF OF APPELLANT**

Robert M. Palumbos
Michael D. Crosson
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1000

Jessica Marroquin
DUANE MORRIS LLP
201 S Biscayne Blvd.
Ste 3400
Miami, FL 33131
(305) 960-2259

*Counsel for Appellant*
*Ezemarval, LLC d/b/a Miacargo Group*

*Ezemarval, LLC v. El Instituto Postal Dominicano*
Appeal No. 24-11306

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1 and 28-1(b) of the Rules of the Eleventh Circuit, Appellant Ezemarval LLC ("Appellant"), through its undersigned counsel, discloses the names of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    Ezemarval LLC (Appellant)

2.    El Instituto Postal Dominicano (Appellee)

3.    Martinez, Jose E. (U.S. District Court Judge)

4.    Duane Morris LLP (Attorneys for Appellant)

5.    Marroquin, Jessica (Attorney for Appellant)

6.    Palumbos, Robert M. (Attorney for Appellant)

7.    Crosson, Michael D. (Attorney for Appellant)

8.    Squire Patton Boggs (US) LLP (Attorneys for Appellee)

9.    Mañón, Raúl B. (Attorney for Appellee)

DM1\15768164.1

*Ezemarval, LLC v. El Instituto Postal Dominicano*
Appeal No. 24-11306

    10.    Bradley, Keith (Attorney for Appellee)

    11.    Kruppa, Andrew Russell (Attorney for Appellee)

    12.    Nombela, Maria Gomez (Attorney for Appellee)

    13.    Mendez, Kayla Marie (Attorney for Appellee)

Appellant certifies that, to the best of its knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## CORPORATE DISCLOSURE STATEMENT

    1.    Appellant Ezemarval LLC is a non-governmental corporate party.

    2.    There is no publicly held corporation that owns 10% or more of Ezemarval LLC's stock.

Dated: October 4, 2024         Respectfully submitted,

                        /s/ Robert M. Palumbos
                        Robert M. Palumbos
                        DUANE MORRIS LLP
                        30 South 17th Street
                        Philadelphia, PA 19103
                        (215) 979-1000

                        *Counsel for Appellant*

DM1\15768164.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................1

ARGUMENT .......................................................................................3

I.   The District Court Based Its Decision on Miacargo's Factual
     Allegations, and This Court Should Do the Same...........................3

     A.   The district court credited Miacargo's allegation that
          the parties entered the Agreement in April 2021. ................3

     B.   The district court credited Miacargo's allegation that
          Inposdom's Board approved the Agreement...........................8

II.  Miacargo Sufficiently Pleaded Facts to Invoke the
     Commercial Activity Exception to Inposdom's Sovereign
     Immunity....................................................................................12

     A.   The district court credited Miacargo's allegations that
          Inposdom canceled the Agreement and refused to
          pay—actions that occurred outside the United States.........12

     B.   There is no "Faux-Contract," and the Agreement and
          the activities conducted in connection with it are
          "commercial activity." ........................................................13

     C.   Inposdom's breach caused a "direct effect" in the
          United States because Inposdom's obligations to pay
          and return equipment were due in the United States.........15

III. Inposdom Waived Sovereign Immunity in Its Agreement
     with Miacargo...........................................................................17

     A.   Under this Court's precedent, Inposdom had the
          authority to waive its sovereign immunity by entering
          into the Agreement. ...........................................................17

     B.   Inposdom's refusal to return the equipment Miacargo
          provided is a ratification of the Agreement.........................24

C.    To the extent foreign law is relevant, the district court's opinion did not adequately consider Miacargo's experts. .................................................................... 28

CONCLUSION ...................................................... 30

CERTIFICATE OF COMPLIANCE..................................... 32

CERTIFICATE OF SERVICE............................................ 33

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*Agurcia v. Republica de Honduras*,
No. 21-13276, 2022 WL 2526591
(11th Cir. July 7, 2022) (per curiam) ............................................... 7, 12

*Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*,
179 F.3d 1279 (11th Cir. 1999) ............................................... 18, 19, 20

*Devengoechea v. Bolivarian Republic of Venezuela*,
889 F.3d 1213 (11th Cir. 2018) ............................... 5, 15, 16, 18, 20, 21

*Douglas v. United States*,
814 F.3d 1268 (11th Cir. 2016) ............................................................ 3

*First Fidelity Bank, N.A. v. Government of Antigua and Barbuda*,
877 F.2d 189 (2d Cir. 1989) ........................................................... 19, 20

*GDG Acquisitions LLC v. Government of Belize*,
849 F.3d 1299 (11th Cir. 2017) ..................................................... 20, 26

*Global Marine Exploration, Inc. v. Republic of France*,
33 F.4th 1312, 1321-22 (11th Cir. 2022) ......................................... 7, 8

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*,
910 F.3d 1186 (11th Cir. 2018) .......................................................... 23

*Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*,
129 F.3d 543 (11th Cir. 1997) ........................................................ 8, 15

*In re Home Depot Inc.*,
931 F.3d 1065 (11th Cir. 2019) .......................................................... 23

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221 (11th Cir. 2021) ............................................................ 3

*Larson v. Domestic & Foreign Comm. Corp.*,
   337 U.S. 682 (1949)................................................................29

*Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*,
   184 F. Supp. 2d 277 (S.D.N.Y 2001)....................................29

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*,
   501 F.3d 1244 (11th Cir. 2007)..............................................3

*Norelus v. Denny's, Inc.*,
   628 F.3d 1270, 1296 (11th Cir. 2010) ..................................24

*R&R International Consulting LLC v. Banco
   do Brasil, S.A.*, 981 F.3d 1239, 1244 (11th Cir. 2020) ......13

*Ruckh v. Salus Rehabilitation, LLC*,
   963 F.3d 1089, 1110-11 (11th Cir. 2020)............................24

*Samantar v. Yousuf*,
   560 U.S. 305 (2010)................................................................30

*Sanderlin v. Seminole Tribe of Florida*,
   243 F.3d 1282 (11th Cir. 2001)............................................17

*Sec'y, U.S. Dep't of Labor v. Preston*,
   873 F.3d 877 (11th Cir. 2017)..............................................23

*Tracy v. Florida Atlantic Univ. Bd. of Trustees*,
   980 F.3d 799 (11th Cir. 2020)..............................................25

*Yee v. City of Escondido, Cal.*,
   503 U.S. 519 (1992)................................................................23

**Statutes**

28 U.S.C. § 1605(a)(1)....................................................... 18, 30

Dominican Law 307........................................... 5, 6, 9, 10, 29

**Rules**

Rule 12(b)(1) ..............................................................................3

**Other Authorities**

27 Williston on Contracts § 70:114 (4th ed.)...........................................26

## INTRODUCTION

The district court did not question a single fact that Plaintiff
Ezemarval, LLC (d/b/a "Miacargo") alleged in its complaint and
supported through its submissions in opposing the motion to dismiss.
Those facts encompassed everything needed to establish jurisdiction
under the Foreign Sovereign Immunities Act ("FSIA"), including that:

- Inposdom's Director General, Adan Peguero,
  extensively negotiated the Agreement that Miacargo
  seeks to enforce;

- Miacargo obtained a legal opinion from a law firm in
  the Dominican Republic that El Instituto Postal
  Dominicano ("Inposdom") had authority to enter into
  the Agreement and waive sovereign immunity if its
  Board approved it and Inposdom's Director General
  signed it;

- Inposdom's Board approved the Agreement, which
  expressly waives sovereign immunity and requires that
  Miacargo receive payment in the United States;

- Inposdom's Director General signed the Agreement;

- Inposdom accepted Miacargo's conspicuous services
  performed under the Agreement; and

- Inposdom has refused to return $1.5 million in
  property that Miacargo provided under the Agreement.

Because those facts establish jurisdiction under the FSIA's
commercial activity exception and the waiver exception, Inposdom asks
this Court to set them aside and make its own contrary factual findings.

Among other things, Inposdom makes the inflammatory accusation that the Board resolution is "fictitious" and the Agreement is a "Faux-Contract" about which Inposdom was, somehow, not even aware.

Inposdom's version of events is untethered from reality. But more importantly, it is completely absent from the district court's decision. The district court *accepted* Miacargo's allegations and then made several legal errors, such as requiring Miacargo to allege that it was relying on the third prong of the commercial activity exception and applying Dominican Republic law, rather than the federal law of agency, to determine the authority of Inposdom's Director General to waive immunity. Those errors are the subject of this appeal—not Inposdom's request for a freestanding fact-finding exercise to undermine the factual basis for the district court's dismissal.

The FSIA permits American companies conducting business with foreign sovereigns to rely upon the actions of a foreign official appointed as the head of an agency, backed by a board approval for those actions. This Court should reaffirm that foreign sovereigns—like any other contracting party—must honor their agreements in American courts when their conduct falls within the FSIA's immunity exceptions.

## ARGUMENT

### I.   The District Court Based Its Decision on Miacargo's Factual Allegations, and This Court Should Do the Same

#### A.   The district court credited Miacargo's allegation that the parties entered the Agreement in April 2021.

Inposdom confuses what the district court *could have done* with what it *actually did* in this case. Although a district court may weigh evidence and assess credibility when faced with a factual attack on its subject matter jurisdiction under Rule 12(b)(1), *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221 at 1230-32 (11th Cir. 2021), the district court here did no such thing. It conducted no jurisdictional fact-finding and instead accepted Miacargo's allegations in the complaint as true. (Doc 48.) When a district court does not decide any issues of disputed fact, this Court treats the dismissal as "facial." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In addition, this Court does not make factual findings for the first time on appeal. *Douglas v. United States*, 814 F.3d 1268, 1275 (11th Cir. 2016) ("No matter the *reason* behind a dismissal, we can't convert a facial dismissal into a factual one on appeal. If we did, we would be finding facts for the first time on appeal."). Thus, this Court cannot now

treat as a "faux-contract" what the district court accepted as a valid agreement. (Doc 48.)

On the commercial activity exception, the district court made a legal determination—not a factual finding—that Miacargo's complaint did not "allege facts sufficient to invoke the commercial activity exception." (Doc 48 – Pgs 5-6.) The court erred by holding that entering into a contract is insufficient to establish that a foreign sovereign engaged in commercial activity and wrongly concluded that Miacargo needed to invoke the third clause of the commercial activity exception more specifically. (Doc 48 – Pg 5.) But the district court never found that Miacargo's allegations were untrue, lacked factual support, or were contradicted by the record. (Doc 48.) In fact, the district court's recitation of the facts cites exclusively to Miacargo's complaint. (Doc 48 – Pgs 1-2.) The district court simply erred as a matter of law in determining that the commercial activity exception does not apply.

On the FSIA's waiver exception, the district court found that Miacargo met its initial burden. (Doc 48 – Pg 4.) Specifically, the district court found that the Agreement and its waiver clause were sufficient evidence to shift the burden to Inposdom to prove by a

preponderance of the evidence that the waiver exception did not apply. (Doc 48 – Pg 4.) That the district court viewed the Agreement as sufficient evidence to shift the burden on waiver to Inposdom shows that the district court treated the Agreement as valid, contradicting Inposdom's "faux-contract" theory.

Inposdom attempts to obscure these points by selectively quoting the district court's language. It relies on the district court's summary of Inposdom's own arguments regarding Dominican Law 307 to claim that the district court "conducted [a] factual inquiry" and found that Peguero "was acting outside the scope of his employment." (Opp. Br. – Pg 23.) But this statement merely recites Inposdom's argument on Dominican Law 307, as is clear from the full quotation: "*Defendant also argues* that the purported waiver is invalid because Mr. Peguero was acting outside of the scope of his employment." (Doc 46 – Pg 4.) (emphasis added). It expresses no finding of jurisdictional fact on the part of the district court.

Similarly, the district court's use of the phrase "by a preponderance of the evidence" refers only to the FSIA's burden-shifting framework that applies in any FSIA case. *Devengoechea v. Bolivarian*

*Republic of Venezuela*, 889 F.3d 1213, 1221 n.9 (11th Cir. 2018). That language does not imply that the district court found against Miacargo on any factual question, as confirmed by the fact that the district court did not cite to any of Inposdom's submissions on disputed facts.

Ultimately, the district court ruled against Miacargo on the FSIA's waiver exception because of its legal determinations as to Dominican law. (Doc 48 – Pgs 4-5.) It determined that the Dominican Constitution bars any waiver of sovereign immunity and that Dominican Law 307 prohibits Inposdom and its Director General from "renounc[ing] the sovereign immunity that protects Inposdom." (Doc 48 – Pg 4.) To the extent the district court credited Inposdom's evidence over Miacargo's, it was by implicitly crediting Inposdom's experts on Dominican law, while disregarding the contrary position of Miacargo's legal experts. (Doc 48 – Pgs 4-5.) Miacargo contends that this decision was legal error because the district court should have applied federal agency law, not Dominican law, to determine whether waiver existed under the FSIA.

This Court's review on appeal should be based on what the district court relied on, consistent with this Court's approach in other FSIA

cases. For example, in *Global Marine Exploration, Inc. v. Republic of France*, this Court examined the district court's determination of the foreign sovereign's activities alongside the plaintiff's amended complaint—specifically considering the sovereign's actions, such as entering an agreement—to determine whether those actions constituted "commercial activities." 33 F.4th 1312, 1321-22 (11th Cir. 2022). This Court held that the alleged activities, including "overseeing the logistics of the project," were "commercial in nature and of the type negotiable among private parties." *Id.*; *see also Agurcia v. Republica de Honduras*, No. 21-13276, 2022 WL 2526591, at *3 (11th Cir. July 7, 2022) (per curiam) (noting that the district court based its decision on the amended complaint's factual allegations and stating that "we largely limit our review to the plaintiffs' factual allegations, which we accept as true for purposes of this appeal"). Here, too, this Court should limit its review to Miacargo's factual allegations and accept them as true for purposes of this appeal, because that was the district court's approach.

Inposdom's brief reads as if Miacargo cannot obtain jurisdiction without fully proving its case prior to discovery. But this Court has recognized a distinction between evaluating the merits of a plaintiff's

claims and assessing whether the plaintiff's allegations suffice to establish jurisdiction under the FSIA. *See, e.g., Glob. Marine*, 33 F.4th at 1324 ("While we pass no judgment on the merits of [the plaintiff's] claims, we find that the 'gravamen' of [the plaintiff's] suit is [the foreign sovereign's] activities … and its failure to compensate [the plaintiff] for the value of the services."); *Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*, 129 F.3d 543, 549 (11th Cir. 1997) ("Jurisdiction is properly in the Southern District of Florida. Our observations and holding are only for the purpose of reviewing the denial of the motion to dismiss. We do not intend to prejudge the merits which will have to await trial.").

In reviewing the district court's decision, this Court should focus on the materials that the district court itself relied upon. Because the district court did not engage in jurisdictional fact-finding, this Court should reject Inposdom's invitation for it to make factual determinations for the first time on appeal that are at odds with those on which the district court based its decision.

## B.    The district court credited Miacargo's allegation that Inposdom's Board approved the Agreement.

Miacargo clearly alleged in its complaint that Inposdom's Board approved the Agreement, and the district court did not find otherwise.

On appeal, however, Inposdom asserts that the document evidencing the Board's approval is "fabricat[ed]." (Opp. Br. – Pgs 57-58.) But once again, Inposdom asks this Court to find factually what the district court did not. The district court credited Miacargo's allegations that the parties entered into the Agreement in 2021 and cited the paragraph in Miacargo's complaint that described Inposdom's Board's approval of the Agreement. (Doc 46 – Pg 1, citing Doc 1 – Pgs 2-3, ¶¶ 7-14.)

Inposdom's argument that the Board resolution is "illegitimate on its face" (Opp. Br. – Pg 58) rests on a fundamental misreading of both the resolution and Law 307. The attendance sheet from the resolution lists four voting members, plus the Secretary of the Board and Peguero. (Doc 39-2 – Pgs 8-9.) This attendance list is precisely what Article 4 of Law 307 provides for: four ex-officio members and a Secretary who does not vote. (Doc 39-1 – Pg 4.) In addition, Peguero, as the General Director of Inposdom, was presumably present in accordance with his role as Inposdom's executive and his right to request that the Board meet "as many times as necessary." (Doc 39-1 – Pg 6, Art. 6.) Thus, the number of voting attendees is consistent with what the law mandates,

and the resolution is not "illegitimate on its face," as Inposdom argues. (Opp. Br. – Pg 58.)

Further, Inposdom's assertion that four of the listed individuals were not Board members misconstrues Article 4 of Law 307. The law clearly provides that ex-officio members "will have as substitutes their own stand-ins in the institutions and organizations that they represent, or the officer of the members that they appoint." (Doc 39-1 – Pg 4.) In other words, the meeting attendees did not need to be the members identified by title in Article 4 of Law 307.

Inposdom bases much of its argument on the Board resolution on the declaration of Arlenny Tineo, the Secretary of Inposdom's Board at the time she submitted her declaration. (Doc 46-3.) But Ms. Tineo was not the Secretary when the Board approved the Agreement. The meeting occurred on April 7, 2021, but Ms. Tineo did not become the Secretary until September 1, 2022—nearly a year and a half later. (Doc 1 – Pg 2, ¶ 7; Doc 46-3 – Pg 2, ¶ 1.) Although Ms. Tineo may have access to Inposdom's archives, she has no personal knowledge of what happened to those archives in the intervening 17 months between the meeting and her appointment as Secretary.

Ms. Tineo's declaration also stated that the notary public who stamped the Board Resolution was not a member or employee of the Board at the time. (Doc 46-3 – Pg 3, ¶ 9.) But, again, Ms. Tineo was not the Secretary at the time of the meeting and provides no documentary support for her assertion. (Doc 46-3 – Pg 2, ¶ 1.) In any event, the Board plausibly could have used the services of an independent notary public.

Inposdom also claims that it submitted a declaration from the current Director General of Inposdom that states that Inposdom searched its records "and found no administrative action by the board authorizing the Faux-Contract." (Opp. Br. – Pg 21.) But that document says nothing about Inposdom's supposed search of its records. (Doc 34-1 – Pgs 60-62.) Moreover, the document, which was originally filed by Inposdom in a Dominican Republic court, does not appear to be a "declaration" at all. (Doc 34-1 – Pgs 60-62.)

Even if this Court were inclined to review documents outside of those forming the basis of the district court's opinion, Inposdom's proffered evidence does not support its incendiary suggestion of a "fabricated" resolution. The evidence does not show that the Board meeting never happened or that the Board approval was invalid any

more than it establishes that Inposdom removed the minutes from its archives or otherwise altered its files on the attendees. The district court credited Miacargo's allegation that Inposdom's Board approved the Agreement, and this Court should do the same.

## II.    Miacargo Sufficiently Pleaded Facts to Invoke the Commercial Activity Exception to Inposdom's Sovereign Immunity.

### A.    The district court credited Miacargo's allegations that Inposdom canceled the Agreement and refused to pay—actions that occurred outside the United States.

Miacargo alleged, and the district court accepted, that Inposdom canceled the Agreement in November 2021. (Doc 48 – Pg 2; "Plaintiff alleges that, on November 16, 2021, Defendant's 'newly appointed Interim Director General, Katiusca Del Carmen Báez[,] held a press conference informing the media that she had canceled' the 2021 Agreement." (quoting Doc 1 – Pg 3, ¶ 10).) The district court found no ambiguity as to which Agreement was terminated or when it was terminated. (Doc 48 – Pg 2.) Inposdom's argument that it never canceled the Agreement is thus contradicted by the district court's decision, and the Court should reject Inposdom's request for this Court to look beyond that record. *See Agurcia*, 2022 WL 2526591, at *3.

Miacargo also alleged that Inposdom refused to allow it to retrieve its equipment and refused to return the equipment or pay the $10 million due under the Agreement. (Doc 1 – Pg 4, ¶¶ 11-12, 14-16.) The district court, relying on Miacargo's complaint, found that Miacargo demanded payment and that Inposdom refused. (Doc 48 – Pg 2.) Inposdom's argument that a six-month written notice of termination was required to trigger its obligations under the Agreement is moot. (Opp. Br. – Pg 65.) Well over six months have passed from any conceivable date of termination, and Inposdom cannot now hide behind the lack of written notice after it publicly announced the cancellation in a press conference. As this Court found in *R&R International Consulting LLC v. Banco do Brasil, S.A.*, Inposdom's decision to refuse to perform under the Agreement is an act that took place in the foreign state and that satisfies the third clause of the commercial activity exception. 981 F.3d 1239, 1244 (11th Cir. 2020).

**B.    There is no "Faux-Contract," and the Agreement and the activities conducted in connection with it are "commercial activity."**

Miacargo's complaint undoubtedly alleges facts sufficient to establish that Inposdom engaged in "commercial activity" by entering

the market in the manner of a private player to contract for Miacargo's shipping and logistics services. Inposdom tacitly concedes this point, as its sole argument in opposition is that the Agreement is a so-called "Faux-Contract." The district court's opinion provides no support for this label. *See supra* at 1-6, Section I.A.

Even if the Court were to look beyond Miacargo's complaint, the declaration of Diego Vestillero, CEO of Miacargo, provides additional support for the commercial activity exception. Mr. Vestillero's declaration details several conversations he had with Peguero about modernizing and improving Inposdom's services, culminating in the Agreement at issue. (Doc 46-3 – Pgs 3-4, ¶¶ 9-17.) The declaration further describes the work Miacargo performed for Inposdom following the Board's approval, including a public ceremony in the summer of 2021 to celebrate the upgrades Miacargo provided. (Doc 46-3 – Pgs 6-7, ¶¶ 21-26.)

As explained at length in Miacargo's principal brief, Inposdom's decision to enter the market for Miacargo's services fits squarely within what the Supreme Court and this Court have deemed a foreign sovereign's "commercial activity." (Miacargo's Br. – Pgs 14-19.)

14

C.    **Inposdom's breach caused a "direct effect" in the United States because Inposdom's obligations to pay and return equipment were due in the United States.**

Miacargo's allegations, supported by the Agreement itself, establish that Inposdom was required to pay Miacargo in the United States and return Miacargo's equipment in the United States, where Miacargo is based. (Doc 1 – Pg 4, ¶¶ 11-12, 14-16.) In *Devengoechea*, this Court read "the allegations of [the plaintiff's] complaint in the light most favorable to [the plaintiff]" and concluded "that payment for or return of the [property] at issue was necessarily to occur in the United States." 889 F.3d at 1225. This same reasoning applies with equal force to Miacargo's allegations here. *Id.* at 1225-26.

First, the Agreement states that Miacargo shall receive payment in Florida. (Doc 1 – Pg 11, § 12.) Inposdom attempts to sow confusion by pointing to obligations under the Agreement that were to be performed in the Dominican Republic, such as delivering mail. But the relevant inquiry is not whether all performance occurred in the United States, but whether Inposdom's decisions made outside the United States in connection with commercial activity caused a direct effect in the United States. *See Honduras Aircraft Reg.*, 129 F.3d at 545-46, 549 (finding

that the third clause of the commercial activity exception was satisfied when much of the plaintiff's performance occurred in Honduras). Here, Inposdom's refusal to pay or return the equipment caused a direct effect in the United States because that is where the money and property were due, regardless of the location of other services rendered.

Inposdom also conflates a provision of the Agreement addressing where its clients could make payments (Doc 1 – Pg 10, § 8) with the Agreement's provision about where Miacargo was to receive payment from Inposdom (Doc 1 – Pg 11, § 12). (Opp. Br. – Pg 72.) The most straightforward reading of the facts alleged and the district court's opinion is that payment and return of Miacargo's equipment "was necessarily to occur in the United States." *Devengoechea*, 889 F.3d at 1225. Accordingly, this element of the commercial activity exception has been satisfied.

Recognizing that Miacargo has sufficiently pleaded facts to establish the commercial activity exception, Inposdom now asks this Court to make factual findings that the district court never made—such as that the Agreement is not real or was never canceled. For all the reasons explained above, the Court should reject that request. Miacargo

alleged that Inposdom took actions outside the United States in connection with commercial activity that had a direct effect in the United States. As such, the commercial activity exception applies and the district court has jurisdiction to adjudicate Miacargo's claims.

## III. Inposdom Waived Sovereign Immunity in Its Agreement with Miacargo.

### A. Under this Court's precedent, Inposdom had the authority to waive its sovereign immunity by entering into the Agreement.

In arguing that Inposdom lacked the authority to enter the Agreement and waive immunity, Inposdom cites cases that do not involve the FSIA and do not concern foreign officials. (Opp. Br. – Pgs 18-19.) Inposdom ignores that this Court analyzes waivers of FSIA immunity differently than it analyzes waivers of immunity in other contexts.

For example, in one of the decisions on which Inposdom relies—*Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282 (11th Cir. 2001)—this Court noted that "waivers of tribal sovereign immunity cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed," *id.* at 1286, and that agency principles are inapplicable in that context, *id.* at 1288. By contrast, the FSIA permits

implicit waivers of sovereign immunity, *see* 28 U.S.C. § 1605(a)(1), and this Court applies agency principles to analyze potential waivers of immunity under the FSIA, *see Devengoechea*, 889 F.3d at 1226-28.

When Inposdom does cite FSIA cases, it turns to out-of-circuit authority. (Opp. Br. – Pg 20.) Yet, as Miacargo's principal brief explains, this Court has repeatedly addressed whether a foreign official had the authority to waive sovereign immunity under the FSIA and consistently applied the federal law of agency to answer this question. (Miacargo's Br. – Pgs 26-32.) The district court, however, did not follow that approach.

When it does engage with this Court's precedent, Inposdom misconstrues it. First, in *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279 (11th Cir. 1999), this Court instructed district courts *not* to delve into foreign law to "determine precisely what is required for an effective waiver of sovereign immunity under [foreign] law," "commend[able]" as such an effort might be. *Id.* at 1293. Although *Aquamar* noted that there may be circumstances in which an ambassador lacks the authority to waive immunity, it suggested that courts could assess a clear lack of authority based on "statements" and

18

"relevant correspondence" to determine whether an ambassador "plainly contradict[s] the position of his sovereign." *Id.* at 1299. The opinion did not suggest that a district court should look to a foreign sovereign's law to make such a determination.

In fact, *Aquamar* warned against the perils of determining an official's authority based on foreign law:

> Requiring the courts to look to a sovereign's local law to determine the authority of any agent who purports to waive sovereign immunity, even if that agent is an ambassador, would hinder the goals of the FSIA and its waiver provision. Such a rule at best would create a roadblock to all FSIA actions, requiring lengthy, unpredictable, and frequently inconclusive inquiries into conflicting interpretations of foreign law (such as that undertaken by the district court in this action). At worst, both foreign sovereigns and the parties involved in litigation with them could abuse such a rule.

*Id.* at 1298.

Inposdom similarly misreads one of the cases that *Aquamar* cited, the Second Circuit's decision in *First Fidelity Bank, N.A. v. Government of Antigua and Barbuda*, 877 F.2d 189 (2d Cir. 1989). The "circumstances" that *First Fidelity* considered important in determining whether an ambassador had apparent authority are the "facts of a given

19

case" within the "proper framework" of federal agency law, not foreign law. *Id*. at 193.

Although *Aquamar* involved an ambassador, this Court has since extended the logic of *Aquamar* to the authority of foreign officials other than ambassadors. *See Devengoechea*, 889 F.3d at 1226-27. Inposdom is therefore wrong that the presumption from *Aquamar* is limited to ambassadors. *Id*.

There is no question that this Court applied federal law—not foreign law—in *Aquamar*, *GDG Acquisitions LLC v. Government of Belize*, 849 F.3d 1299 (11th Cir. 2017), and *Devengoechea*. Still, Inposdom contends that this Court did not say that federal law applies "to the exclusion of the relevant foreign law." (Opp. Br. – Pg 35.) This argument overlooks *Aquamar*'s admonition, reiterated in *Devengoechea*, against applying foreign law to these inquiries. 179 F.3d at 1297-98; *Devengoechea*, 889 F.3d at 1227. Fundamentally, Inposdom's position is that the Court did not mean what it said. There is no need to mine these opinions for what this Court did *not* say, because what this Court *did* say was that the correct approach for determining whether a foreign

official had the authority to waive sovereign immunity is to evaluate the official's actions under the federal law of agency.

Miacargo's allegations are in line with those of the plaintiff in *Devengoechea*, where this Court found that foreign officials acted with both apparent authority and actual authority. 889 F.3d at 1226-28. As explained in its principal brief, Miacargo alleged that (1) Peguero extensively negotiated the Agreement, (2) Miacargo obtained a legal opinion that Inposdom had authority to enter the Agreement and waive immunity with approval from its Board, (3) Inposdom's Board approved the Agreement, and (4) Inposdom accepted Miacargo's conspicuous services. (Miacargo's Br. – Pgs 29-32.)

Inposdom incorrectly argues that Miacargo did not identify any conduct by a principal to support Miacargo's reasonable belief that Peguero had the authority to enter the Agreement and waive Inposdom's immunity. (Opp. Br. – Pgs 55-57.) But Inposdom's own conduct in appointing Peguero as the Director General of Inposdom, and the reasonable expectations of what a chief executive of an agency has the authority to do, fully support Miacargo's belief. (Doc 1 – Pg 2, ¶ 5.)

Moreover, Miacargo relied on the Board's approval of the Agreement. (Doc 1 – Pg 2, ¶¶ 6-8.)

Indeed, it is hard to imagine a clearer manifestation of intent on which Miacargo should be entitled to rely than approval by Inposdom's Board. If American companies cannot rely on the actions of a foreign official appointed as the head of an agency, or on a Board resolution executed on official letterhead and notarized, as evidence of a foreign sovereign's commitment, then it would be impossible for them to have any confidence that their agreements won't be rendered meaningless whenever the political winds shift. The Court should find that Miacargo established that it reasonably believed that Peguero had contracting authority.

Finally, Miacargo is not raising new issues on appeal. Miacargo has consistently argued that Peguero had the authority to bind Inposdom to the Agreement and waive its sovereign immunity. Apparent authority is not a new issue but merely a refined legal argument supporting the same core issue presented below.

The Court has long distinguished between new issues, which may be forfeited, and new arguments, which are permissible on appeal. *See*

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018) ("Parties can most assuredly waive [or forfeit] positions and issues on appeal, but not individual arguments.") (quotation omitted); *In re Home Depot Inc.*, 931 F.3d 1065, 1086 (11th Cir. 2019); *see also Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017) ("Offering a new argument or case citation in support of a position advanced in the district court is permissible—and often advisable. (Were the rule otherwise, we could never expect the quality and depth of argument to improve on appeal.)") (citing *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992)).

In *Home Depot*, this Court permitted a new argument on appeal that relied on a different line of precedent, and even contradicted the arguments made in district court, because the argument addressed the same core issue—whether a fee multiplier was appropriate. 931 F.3d at 1086. The argument was not waived since it made the "same request, albeit for different (and contradictory) reasons." *Id*. Here, Miacargo's argument on apparent authority provides a new legal basis for the same request that this Court find that Peguero and Inposdom had the

authority to enter the Agreement and waive Inposdom's sovereign immunity.

The cases Inposdom cites are distinguishable. In *Ruckh v. Salus Rehabilitation, LLC*, the court rejected a wholly new damages theory that required additional fact-finding in a post-trial appeal context—a clear departure from the procedural posture and issues here. 963 F.3d 1089, 1110-11 (11th Cir. 2020). Similarly, *Norelus v. Denny's, Inc.* is inapplicable because it involved an attempt to introduce an entirely new factual theory never argued or considered by the parties or the district court in over a decade of proceedings. 628 F.3d 1270, 1296 (11th Cir. 2010). Here, Miacargo's argument is grounded in the same facts as presented below and does not call for any new findings.

## B.    Inposdom's refusal to return the equipment Miacargo provided is a ratification of the Agreement.

Miacargo's complaint—which the district court credited without reservation—plainly alleged that Miacargo provided equipment to Inposdom under the Agreement and in furtherance of the services Miacargo provided under the Agreement. (Doc 1 – Pgs 2-3, ¶¶ 8-9.) It also alleged that Inposdom retained Miacargo's equipment, worth more than $1.5 million, despite repeated demands for its return. (Doc 1 – Pg

4, ¶¶ 11-14.) The district court recognized that Inposdom terminated the Agreement in November 2021. (Doc 48 – Pg 2.)

In its opposition, Inposdom argues that Miacargo must keep asking for the return of its equipment before it can establish federal jurisdiction (though Inposdom never specifies just how many pleas for its return are required). According to Inposdom's logic, U.S. courts only have jurisdiction when a foreign government explicitly refuses to return property—meaning that a foreign sovereign could evade jurisdiction by avoiding direct refusals while holding onto the assets. That position is absurd. American businesses faced with a foreign sovereign retaining $1.5 million worth of their property—after cancelling the contract publicly and stonewalling any further inquiries—would do exactly what Miacargo did: enforce their rights in an American court.

In asserting that it lacked full knowledge of the Agreement, Inposdom again asks this Court to go against the factual basis of the district court's decision. (Opp. Br. – Pgs 51-52.) Inposdom cannot now disclaim awareness of the Agreement that the district court found Inposdom entered into with Miacargo. *See Tracy v. Florida Atlantic Univ. Bd. of Trustees*, 980 F.3d 799, 806 (11th Cir. 2020) (noting the

general rule that "[o]ne who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them") (quoting 27 Williston on Contracts § 70:114 (4th ed.)).

Inposdom also misreads *GDG Acquisitions LLC* to suggest that Belize's payments under the contract were a prerequisite for this Court to find ratification. (Opp. Br. at 53-54.) While Belize made regular payments before disputing the contract's validity, this Court did not hold that ratification can *only* be established through payments. 849 F.3d at 1308-10. Rather, *GDG* recognized that both payment and retention of benefits are distinct bases for ratification. *Id*. In fact, the Court wrote that *neither* act could "be understood absent the assumption that the Government intended to be bound by the agreement." *Id*. at 1310. As such, a foreign sovereign's retention of benefits is sufficient to establish that it ratified a contract. *Id*.

In arguing that the Agreement does not call for Miacargo to provide equipment to Inposdom or perform services at Inposdom's offices, Inposdom misreads the Agreement and ignores the allegations in Miacargo's complaint. Section 9 of the Agreement provides that

"[u]pon the termination of this Agreement, each Party shall turn over to the other Party any and all property belonging to the Party." (Doc 1 – Pg 11, § 9.) This language contemplates Inposdom's possession of Miacargo's property and its obligation to return it, and Miacargo's allegations are fully aligned with this provision. (Doc 1 – Pgs 2-4, ¶¶ 8-14.) In addition, the Agreement provides that "MIACARGO shall undertake all operative or administrative processes for INPOSDOM at its offices," which supports Miacargo's allegation that it developed new administrative processes and provided the necessary equipment for those efforts. (Doc 1 – Pg 8, § 1(E); Doc 1 – Pgs 2-3, ¶¶ 8-9.)

Like Miacargo's apparent authority argument, ratification is not a new issue on appeal. Rather, it is a new legal argument based on the same facts before the district court: Peguero executed the Agreement, the Board approved it, and Inposdom retained Miacargo's equipment worth over $1.5 million.

Miacargo argued in the district court that Inposdom recognized the validity of the contract by rescinding it. (Doc 39 – Pgs 10-11.) That argument was sufficient to preserve the broader issue that, regardless of the Agreement's initial validity, Inposdom's later actions either

27

validated the Agreement or confirmed its binding effect. In the district court, Miacargo pointed to Inposdom's purported rescission as the validating action; on appeal, Miacargo relies also on Inposdom's retention of the Agreement's benefits. And Miacargo's complaint—which the district court credited—contains all the facts necessary to establish Inposdom's ratification. As such, Miacargo's ratification argument merely underscores its consistent position that Inposdom is bound by the Agreement, whether by actual authority, apparent authority, or ratification.

### C.    To the extent foreign law is relevant, the district court's opinion did not adequately consider Miacargo's experts.

To the extent the district court credited any of Inposdom's evidentiary submissions over Miacargo's, it did so only on the issue of whether Dominican law allows Peguero and Inposdom to waive sovereign immunity in the Agreement. The district court, however, did not discuss why Miacargo's experts were wrong about Dominican law. Thus, the district court not only erred by analyzing Inposdom's contracting authority under the law of the Dominican Republic instead of federal law, it also erred because it relied solely on Inposdom's

interpretation of Dominican law and completely ignored Miacargo's expert opinions about the issue. (Doc 48 – Pgs 4-5.) On appeal, Miacargo argues that the district court's opinion is an inadequate basis on which to affirm findings on the complicated issue of a foreign sovereign's law.

For example, Miacargo argued in the district court that Article 5 of Law 307 authorizes Inposdom's Board to sign agreements with entities such as Miacargo. (Doc 39 – Pg 9; Doc 39-1 – Pgs 5-6.) Article 5 states that Inposdom's Board can "sign[] agreements with national and international organizations in reference to postal affairs," and that it can "[c]arry[] out the necessary steps for the operation of postal services such as the purchase and sale of machinery [and] construction of the necessary facilities." (Doc 39-1 – Pg 6.) Peguero, as Inposdom's highest-ranking executive, had the power to "[e]xercis[e] the legal representation of [Inposdom]." (Doc 39 – Pgs 9-10; Doc 39-1 – Pgs 6-7.)

In addition, the district court's reliance on two cases that do not address the FSIA's waiver provision merits reversal. (Doc 48 – Pg 5.) The first, *Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682 (1949), is a Supreme Court decision from 27 years before Congress enacted the FSIA. The second decision, *Leutwyler v. Office of Her*

*Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 287 (S.D.N.Y 2001), is a district court case about an individual's claim of immunity under the FSIA that has since been foreclosed by the Supreme Court. *See Samantar v. Yousuf*, 560 U.S. 305 (2010). Neither case addresses whether a foreign sovereign waived immunity under § 1605(a)(1).

Although this Court's precedent establishes that federal law, not foreign law, determines Inposdom's authority to waive sovereign immunity, Miacargo's submissions in the district court were correct that, if Dominican law were to apply, Inposdom's waiver of sovereign immunity is valid and binding under the FSIA.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order granting Inposdom's motion to dismiss.

Respectfully submitted,


/s/ Robert M. Palumbos
Robert M. Palumbos
Michael D. Crosson
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1000

Jessica Marroquin
DUANE MORRIS, LLP
201 S Biscayne Blvd.
Ste 3400
Miami, FL 33131
(305) 960-2259

*Counsel for Appellant
Ezemarval, LLC d/b/a
Miacargo Group*

October 4, 2024

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed.

R. App. P. 32(a)(7) because this brief contains 5,796 words.

2.      This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App.

P. 32(a)(6) because it has been prepared with a minimum font size of

14-point Century Schoolbook, a proportionally spaced typeface, using

Microsoft Office Word 2010.

/s/ Robert M. Palumbos
Robert M. Palumbos
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1000

*Counsel for Appellant
Ezemarval, LLC d/b/a
Miacargo Group*

October 4, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, the foregoing was filed via the Court's ECF system and thus served on the following counsel of record:

> Keith Bradley, Esq.
> Kayla Marie Mendez, Esq.
> SQUIRE PATTON BOGGS (US) LLP
> 717 17th St., Suite 1825
> Denver, CO 80202
>
> Raúl B. Mañón, Esq.
> Andrew R. Kruppa, Esq.
> SQUIRE PATTON BOGGS (US) LLP
> 200 South Biscayne Blvd., Suite 3400
> Miami, FL 33131
>
> *Counsel for Appellee*

> /s/ Robert M. Palumbos
> Robert M. Palumbos
> DUANE MORRIS LLP
> 30 South 17th Street
> Philadelphia, PA 19103
> (215) 979-1000
>
> *Counsel for Appellant*
> *Ezemarval, LLC d/b/a*
> *Miacargo Group*